## McClarran v. Longdin-Brugger Co.

*Foreign corporations—Certificate by secretary of state and statement—Sections 178 and 179, General Code—Statutes inapplicable to corporation selling goods through traveling salesmen, when—Agreement limiting sales to one dealer, not "doing business," when—Pleading—Foreign corporation may recover on account without alleging exemption from statutes—Sales—Purchaser cannot remit for part and return unsold part, when—Amendment of petition after verdict and before judgment—Account attached as exhibit to petition made part thereof.*

1. Sections 178 and 179, General Code, have no application to a foreign corporation whose business within the state consists merely in selling through traveling agents and delivering goods manufactured outside of the state.

2. An agreement made by an entirely nonresident and foreign corporation—engaged only in interstate commerce and selling through traveling salesmen—with a local dealer, not to sell other dealers in a designated territory, is not such a doing of business in this state as will subject such corporation to the provisions of Sections 178 to 182, inclusive, or Sections 183 to 188, inclusive, General Code.

3. It is not necessary for an entirely nonresident foreign corporation—with no part of its capital in Ohio, engaged only in interstate commerce, and whose business within the state consists merely in selling through traveling agents and delivering goods manufactured outside of the state— to allege such facts in its petition as a condition precedent to its right to recover for goods so sold and delivered.

4. A purchaser, having received and accepted an order for personal property, cannot, under the Sales Act, at a later date, remit for a part of the goods sold by such purchaser, and, without giving prior notice of a rescission of the contract, return the unsold part for alleged defects in quality and the violation of an alleged agreement not to sell other dealers in a designated territory.

5. It is not an abuse of discretion for the trial court, in a civil action, to permit an amendment to the petition after

verdict and before judgment, by adding the words "and made a part thereof," thereby formally making a copy of an account sued on a part of the petition, when it had been attached to the petition as an exhibit at the time the petition was filed and had also been admitted in evidence.

(Decided May 26, 1926.)

ERROR: Court of Appeals for Wayne county.

*Mr. H. R. Smith,* for plaintiff in error.
*Mr. Daniel C. Funk,* for defendant in error.

FUNK, J. The parties stand in this court in an order the reverse of that held in the court below, and will be referred to as plaintiff and defendant, as they were in that court. Plaintiff sued defendant for $191.52, as the balance due on an account based upon a written order for ten Close-Tite automobile tops.

Defendant for answer, in substance, denied the corporate existence of plaintiff, and denied that it owed plaintiff anything, for the reason that plaintiff had violated its contract by shipping to defendant imperfect and defective goods, and violated its agreement that it would not sell its goods to any other dealers in Wayne county; that defendant, therefore, rescinded the contract and remitted $150.96 for the four tops he had sold, and shipped back to plaintiff the six tops unsold, of the value of $191.52. The case was tried to a jury and a verdict returned for the full amount sued for, upon which judgment was entered. The case is here on error to reverse that judgment.

Numerous errors are complained of, all of which we have carefully considered, and we will discuss

those most relied upon, in their logical order, as they appear in the record.

First. Counsel for defendant contends that the court erred in overruling his motion for judgment on the pleadings, for two reasons: One, because plaintiff had not complied with Sections 178 and 179, General Code, and that its contract was therefore illegal and it had no right to maintain this action; and the other, because plaintiff attempted to shift its cause of action from an action on an account, as alleged in the petition, to an action on a contract, as set forth in its reply.

As to plaintiff's right to maintain its action until it complied with Sections 178 and 179, General Code:

The petition shows that plaintiff is a foreign corporation, with its principal place of business in the state of Wisconsin. The natural inference would thus be that its goods were made in that state. It was not necessary for plaintiff to allege, as a condition precedent to its right to recover, that it had no part of its capital or plant in Ohio and engaged in Ohio only in interstate commerce, or that it was entirely nonresident and selling in Ohio only by correspondence or traveling salesmen. If defendant claimed that plaintiff had a part of its capital or plant in Ohio, and was doing business in Ohio, other than interstate commerce, or selling only by correspondence or traveling salesmen, so as to require plaintiff to comply with certain laws of Ohio pertaining to corporations, that is matter for defense, to be pleaded and determined from the evidence.

It is contended that plaintiff was not required to comply with Sections 178 and 179, General Code,

by force of the provisions of Section 188, General Code.

It will be observed that Section 188 definitely exempts certain kinds of foreign corporations from the provisions of Sections 183 to 187, inclusive, which five sections have reference only to a foreign corporation "owning or using a part or all of its capital or plant in this state," and that it makes no reference whatever to said Sections 178 and 179; that Section 178 contains a clause of its own specially exempting from its provisions fewer kinds of foreign corporations than those exempted by Section 188; that the legislative history of the provisions contained in Sections 178 to 182, inclusive, is somewhat different from that of the provisions contained in Sections 183 to 188, inclusive; and that the provisions of said two sets of sections were originally enacted at different times. Hence Section 188 seemingly has no application or reference to Sections 178 and 179.

However, be that as it may, we find from the pleadings and the evidence that plaintiff was merely selling through traveling agents and delivering goods manufactured outside of the state and had no part of its capital or plant in this state, and we are, therefore, of the opinion that said Sections 178 and 179 have no application or are inoperative as to plaintiff, because in violation of the federal Constitution and laws pertaining to interstate commerce. The fact that plaintiff agreed not to sell any other dealer in a particular territory would not bring plaintiff within the purview of either Sections 178 and 179 or Sections 183 to 187, inclusive, under the syllabus and the argument of the court in *Toledo Commercial Co.* v. *Glen Mfg. Co.*,

55 Ohio St., 217, 45 N. E., 197, which we think controls the instant case. The case of *Haldy* v. *Tomoor-Haldy Co.*, 3 N. P., 43, 4 O. D. (N. P.), 118, which was decided some time before *Toledo Commercial Co.* v. *Glen Mfg. Co.*, is to the same effect, and, although a superior court decision, it throws some light upon this question and may be read with profit. The opinion in 5 C. C., (N. S.), 161, at the bottom of page 163, 16 C. D., 496, *Armour Car Lines* v. *Bigalow Fruit Co.*, also recognizes this holding.

The question as to what constitutes a managing agent, upon whom due process may be properly served under Section 11290, General Code, which was the question determined in *Beach* v. *Kerr Turbine Co.*, (D. C.), 243 F., 706, is an entirely different question than the one we have here, and which Judge Westenhaver duly recognized in that case, as appears at the top of page 711; so that in considering the various cases on what is doing business in Ohio one must differentiate between doing business so as to constitute one a managing agent, upon whom service of summons may be had, and doing business so as to require one to comply with Sections 178 and 179.

As to the contention that plaintiff shifted its cause of action from one on an account to one on a contract in the reply, we find from a careful reading of the pleadings that the reply was only answering the allegations of the defendant in his answer; that in addition it pleaded some evidence that was unnecessary and might properly on motion have been stricken out; and that the allegations in the reply did not change the cause of action.

We therefore find no error in the overruling of

the motion for judgment on the pleadings for either reason.

Second. Counsel for defendant contends that the court erred in refusing to permit him to show what was meant by the words "exclusive arrangement" on the order signed by him.

While oral evidence is always competent to explain what the agreement is, where the written part of it is ambiguous, as this was, we do not find that counsel for defendant properly saved this question.

It will be observed that counsel, at the bottom of page 7 of the record, asked the question, "Tell the jury what was meant by the terms 'exclusive arrangement.' "

It will readily be seen that this question was calling for a conclusion, and the objection was properly sustained. If counsel had asked what was said concerning exclusive arrangements, so that the witness could tell the conversation and leave it to the jury as to what was meant, it would have been an entirely different situation. This same situation is apparent concerning the questions on page 9, in reference to the representations concerning the top—especially in the absence of any evidence as to what the representations were—where the questions were asked, "Were they such tops as were recommended to you?" and "Were those tops that you received such tops as was represented to you that they would be by this agent?" These questions call for a conclusion, and do not call for what was said upon the subject, so that the jury could determine what the representations were as to these tops. The objections to the questions on page 10 of the record, in reference to defendant

observing other dealers handling these tops, were properly sustained under the condition of the record, as there had been no competent evidence offered showing that plaintiff had agreed not to sell any other dealers in Wayne county.

Third. Another error complained of is that the court erred in charging as requested by plaintiff and in refusing to charge as requested by defendant, and in its general charge.

After careful consideration of these matters under the condition of the pleadings and the record, we find no error in charging the special requests given, and find no prejudicial error either in the refusal to give special requests or in the general charge.

Fourth. Another error complained of is misconduct on the part of counsel for plaintiff in argument, concerning seasonable goods, and why the representative of plaintiff, who was present in court, did not testify.

The record shows that the only witness called was the defendant, who testified that the goods were not particularly seasonable, but were useful any time of the year, which, aside from plaintiff's letter marked Exhibit I, was the only evidence on the subject other than the part of the goods themselves which was offered in evidence by the defendant. Defendant, being the only witness who testified upon the subject of whether or not the goods were seasonable, surely cannot complain because plaintiff did not put on evidence to contradict him and show that they were seasonable. Neither can the defendant complain that plaintiff did not offer evidence to show that the goods were not defective,

or imperfect, and rested its case on the defendant's testimony on this subject.

The record further shows that counsel for defendant invited the argument of counsel for plaintiff on why a certain representative of plaintiff, who was present in court, did not testify, by asking the question and commenting on why he did not testify. While the argument of counsel may not have been couched in as diplomatic language as it might have been, by commenting on whether or not there was anything in the evidence to indicate any reason why he should have testified other than what counsel for defendant may have said, and as the record does not show all that counsel for defendant said to invite this argument, we do not find that what counsel for plaintiff said in argument was misconduct or prejudicial.

Fifth. Another error complained of is that the court permitted the plaintiff, after verdict and before judgment, to amend his petition by adding the words "and made a part hereof," thereby making the copy of the account, which was already attached to the petition, a part of it.

Section 11363, General Code, provides that the court may permit an amendment to the pleadings, either before or after judgment, in furtherance of justice. Furthermore, the doctrine is well recognized that before the permission to amend pleadings will be held to be prejudicial error, the record must affirmatively show that there was a manifest abuse of discretion. *Clark* v. *Clark,* 20 Ohio St., 128; *Brock* v. *Bateman,* 25 Ohio St., 609.

We therefore hold that, the account having been attached as an exhibit to the petition, although not having been formally made a part of it, and hav-

ing been offered in evidence, and being before the court and jury, it was not an abuse of discretion to formally make it a part of the petition after verdict and before judgment, as the formal making of said account a part of the petition could be of little consequence after the case had gone to trial and the account been offered in evidence.

However, there is another reason why the errors complained of are not prejudicial to defendant.

It will be observed that defendant alleged in his answer, in substance, that there is nothing due plaintiff, for two reasons: One, because of a breach of warranty in the quality of the goods; and the other, because plaintiff violated its agreement not to sell any of its goods to any one else in Wayne county, whereupon defendant rescinded the sale and returned to plaintiff the unsold goods to the amount sued upon, to wit, $191.52, and remitted for the goods he sold in the sum of $150.96.

It is thus apparent from the answer that defendant had accepted the goods (see Section 8428, General Code), disposed of almost half of them, and shipped back to plaintiff the unsold goods to the amount sued upon, without any notice of any claimed breach of any promise or warranty, or of any intention to rescind the sale.

The general rule is that one of the essentials to a rescission of the sale for a breach of warranty is that the goods must all be returned, and that the buyer will not be permitted to retain a part and return the balance. *Continental Jewelry Co.* v. *Pugh Bros.,* 168 Ala., 295, 53 So., 324, Ann. Cas., 1912A, 657, paragraphs 1, 2, 3, and 5 of the syllabus; *Learned* v. *Hamburger,* 245 Mass., 461, 139 N. E., 641, paragraphs 5 and 6 of the sylla-

bus. (The statute in the latter case seems to be very similar to the one in Ohio.)

There are some authorities to the effect that under certain circumstances a small portion of the goods need not be returned, or where the contract is severable and not entire, or where the article sold is one which must be used before its quality can be ascertained, the quality not being apparent from examination, it is the right of the buyer to use such portion of the property as is necessary to determine the quality, and that such use does not affect the right to rescind and return the goods, with proper notice, to the seller. However, the weight of authority seems to be that, even where a small portion of the goods might be retained, such rule could have no application where so large a portion of the goods has been retained as appears from the pleadings and the record in this case.

Text-books say that in England, and in most jurisdictions in this country, the rule established denies any right on the part of the buyer, after acceptance and in the absence of fraud, to rescind for breach of warranty as to quality. The right to rescind on this ground is in some jurisdictions conferred by statute, and the Uniform Sales Act, as adopted in this country, contains such a provision.

Ohio is one of the states that has adopted the Uniform Sales Act. Section 8449, General Code, provides how the buyer may rescind the sale for a breach of warranty as to quality. One of the provisions is that the goods must be returned and notice be given within a reasonable time. There is nothing in this section to the effect that any part may be retained, and the defendant having retained and paid for so large a portion of the goods, to

wit, four-tenths, or nearly one-half, we think that his right and remedy, if he has any, as appears from the answer and the record in this case, would be one for damages under Section 8429, which also provides that after acceptance of the goods, if the buyer claims damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale, the buyer must "give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach." *Bloch v. Eastern Machine Screw Corp.* (C. C. A.), 281 F., 777.

It will thus be observed that the giving of notice is one of the essentials either in an action founded in damages under Section 8429, or an action based on a rescission of the sale under Section 8449, and that there is no allegation in the answer or anything in the record to show that the defendant ever did notify the plaintiff of his claimed breach of any promise or warranty in the contract or the sale, until he filed his answer in this case; nor is there any claim that he gave any such notice other than the filing of his answer in this case, but, on the contrary, the record shows he signed a statement after the goods were received on October 30, 1924, that the "same is perfectly satisfactory."

Hence, under the answer filed in this case, showing such a large portion of the goods returned, without any allegation of notice of rescission or notice of any claim of breach of any promise or warranty, and the record clearly showing, by the defendant's own testimony, that he accepted and retained the goods from the latter part of October

until the middle of March, and that he never gave
any notice to plaintiff of any claimed breach of
any promise or warranty as to quality or otherwise,
or of his intention to rescind the sale, or gave any
explanation as to why he paid for four tops and
shipped back the other six tops, until he filed his
answer, we are unanimously of the opinion that the
defendant under this record has neither pleaded
nor proven a legal defense.

For the reasons given, the judgment of the court
below will have to be affirmed.

*Judgment affirmed.*

PARDEE, P. J., and WASHBURN, J., concur.